**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **THE CIRCLE GROUP, L.L.C.** | ) | |
| **And JOYCE LAIDLER,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **PLAINTIFFS,** | ) | **NO. 1:09-CV-3039** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE SOUTHEASTERN CARPENTERS** | ) | |
| **REGIONAL COUNCIL, OF THE** | ) | **JURY DEMAND** |
| **UNITED BROTHERHOOD OF** | ) | |
| **CARPENTERS AND JOINERS** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

**PLAINTIFFS THE CIRCLE GROUP L.L.C. AND JOYCE LAIDLER'S**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I.     BACKGROUND AND PROCEDURAL POSTURE**

    **A.     The Allegations in Plaintiffs' Complaint**

The Circle Group, LLC ("Circle"), brought its action against the Southeastern

Carpenters Regional Council, of the United Brotherhood of Carpenters and Joiners

of America ("Union") asserting the following claims: (1) violation of the secondary

boycott provisions of the National Labor Relations Act, (the "Act"), 29 U.S.C.A. §§

158(b)(4)(ii)(A) and (B); (2) tortious interference with contractual relations; (3)

trademark infringement in violation of 15 U.S.C. §1125(A); (4) cybersquatting in

1

violation of 15 U.S.C. §1125(D); (5) common law trademark infringement; (6) unfair competition in violation of O.C.G.A. §23-3-55 and common law; (7) deceptive trade practices in violation of O.C.G.A. §10-1-371 *et seq.*; (8) invasion of privacy against Joyce Laidler ("Laidler"); (9) attorneys' fees under O.C.G.A. §13-6-11; and (9) punitive damages pursuant to O.C.G.A. §51-12-5.1.

In its secondary boycott claim, Circle alleges that since in or about October 2007, the Union has engaged in an unlawful secondary boycott by threatening, coercing and/or restraining other employers and entities, who are persons engaged in interstate commerce, with an object of (a) forcing or requiring Circle to join the Union; and/or (b) forcing or requiring such entities to cease doing business with Circle. Circle also alleges that the Union has induced or encouraged individuals to refuse to handle goods for a prohibited objective, in violation of the Act.

Circle brings federal unfair competition claims under 15 U.S.C. § 1125, and since the elements of a claim for unfair competition are comparable to trademark infringement (except one does not require a federally registered mark), Circle's claim under 15 U.S.C. § 1125(a) herein shall be hereafter referred to as "Circle's Unfair Competition Claim." In support of Circle's Unfair Competition Claim, Circle alleges, among other things, that the Union has wrongfully used Circle's Group Mark (as defined in the Complaint) in association with a planned and

calculated campaign of wrongful acts against Circle and Circle's business conducted under the Circle Group Mark. Furthermore, Circle alleges that the Union's website, as well as promotional and advertising materials, contain false and misleading information regarding Circle and Circle's business operating under the Circle Group Mark. Circle alleges that the Union employed this scheme in order to cause confusion, mistake and deception as to the affiliation, connection or association of Circle with the Union and that, as a direct and proximate result of the Union's unfair competition, Circle has been damaged and will continue to suffer irreparable injury and damage.

Circle sets out its claim for Cybersquatting under 15 U.S.C. § 1125(d) in Count IV of the Complaint. In support of this claim, Circle alleges that the Union's use of the Circle Group Mark constitutes a bad faith intent to profit from Circle's Group Mark as it, among other things, is likely to cause confusion, mistake and deception as to affiliation, connection or association of Circle with the Union. Circle alleges that Defendant union undertook these acts willfully, with knowledge and in disregard of Circle's trademark rights and that, as a proximate result of the Union's registration and use of [www.thecirclegroupstinkx.info](www.thecirclegroupstinkx.info), Circle has been damaged and will continue to suffer irreparable injury and damage.

Plaintiff Laidler's invasion of privacy claim arises out of the Union's intrusion into her tranquility, well-being and privacy by its stationing of large signs and people across the street from Laidler's chidren's daycare center for several weeks, watching their movements and taunting them.

**B.     The Union's Motion to Dismiss**

While the Union has titled its motion as one to dismiss and states in its Memorandum that "…it is entitled to judgment as a matter of law on Circle's secondary boycott claim arising from correspondence and communication to third parties, and arising from its bannering and handbilling activities," in fact, Circle does not have a "claim" relating to just those activities.  Rather, Circle has a claim for violation of Section 8(b)(4) and has pled numerous facts in support of that single claim, some, but not all, of which relate to bannering and handbilling.  Circle has also pled facts showing that the Union engaged in "common situs picketing" in violation of Section 8(b)(4), which the Union does not argue fails to state a claim on its face, and therefore, concedes must go forward. Thus, the Union is actually asking the Court to do is consider the **substantive evidence** in support of Circle's secondary boycott claim, as set out in the Complaint, and decide what part of that evidence can be considered in assessing that claim, before discovery even begins.

This is clearly inappropriate at this stage of the litigation, and the Union's motion should be denied.

Moreover, insofar as the Union wants the Court to make an evidentiary ruling, the thrust of its argument seems to be that because application of Section 8(b)(4)(ii)(B) can in **some** cases raise First Amendment concerns, and because under the specific facts of particular cases bannering and handbilling have been found to be lawful, the bannering and handbilling at issue in this case is necessarily lawful, without any examination of the factual context. As will be shown hereinafter, in doing so, the Union grossly mischaracterizes precedent and reasserts the same argument that this Court rejected in the past[1] and which the Court should reject again.

The Union also seeks dismissal of Plaintiffs' other claims on the grounds that they fail to state a claim, and that they are barred by the statute of limitations and/or federal preemption. As will also be shown herein, these arguments are equally without merit.

## II.    LEGAL ARGUMENT AND CITATION OF AUTHORITY

### A.    Standard of Proof

---

[1] See Fidelity Interior Construction v. Southeastern Carpenters Regional Council, N.D.Ga. Case No. 1:05-CV-2938-RWS (Order Denying Motion to Dismiss, Dkt. No. 1:05-CV-2938, contained in the Appendix).

The test for determining the sufficiency of a complaint under Rule 12(b)(6) was set out by the United States Supreme Court in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), where it stated:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Id. at 45-46.   See also <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (U.S. 2009); <u>Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.</u>, 144 F.3d 732 (11th Cir. 1998) (in seeking dismissal for failure to state a viable claim, a defendant bears the "very high burden" of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief.)   As will be shown hereinafter, the union cannot meet this burden with respect to any of Plaintiffs' claims.

### B.    <u>The Secondary Boycott Action</u>

#### 1.    Background

Section 8(b)(4) of the Act makes it unlawful for a union or its agents,

(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:

(**A**) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is

prohibited by subsection (e) of this section;

(B) forcing or requiring any person . . . to cease using, selling, handling, transporting or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees.

29 U.S.C.A. §§ 158 (b)(4)(ii)(A) and (B).

Thus, Section 8(b)(4)(ii)(B) is violated when: (1) the union's conduct threatens, coerces or restrains any neutral employer; **and** (2) the conduct's object is to force or require a person to cease business with any other person, or to force another employer to recognize and bargain with a union that has not been certified. Kentov v. Sheet Metal Workers' Intern. Ass'n Local 15, AFL-CIO, 418 F.3d 1259, 1264 (11th Cir. 2005).

Although Section 8(b)(4)(ii)(B)does not refer to picketing or secondary boycotts, it has always been recognized that it prohibits secondary boycotts and that picketing is a form of unlawful "threats, coercion or restraint" if done for a prohibited object. Serv. Employees Int'l Union, Local 87 (Trinity Bldg. Maint.), 312 N.L.R.B. 715 (1993), enforced, 103 F.3d 139 (9th Cir. 1996); Int'l Union, United Mine Workers (New Beckley Mining Corp.), 304 N.L.R.B. 71 (1991), enforced, 977 F.2d 1470 (D.C. Cir. 1992). It has long been recognized that traditional picketing is not the only conduct that falls within the Act's proscriptions, but, rather, that it includes handbilling, bannering and other conduct like that of

which Circle complains.   See, e.g., <u>Gen. Truck Drivers, Warehousemen, Helpers &</u>

<u>Auto. Employees, Local 315 (Atchinson, Topeka & Santa Fe Ry. Co.),</u> 306

N.L.R.B. 616, 631 (1992), enforced, 20 F.3d 1017 (9th Cir. 1994); <u>San Francisco</u>

<u>Bldg. & Constr. Trades Council (Goold Elec.),</u> 297 N.L.R.B. 1050, 1056-57 (1990);

<u>National Ass'n of Broad. Employees & Technicians, Local 31 (CBS, Inc.),</u> 237

N.L.R.B. 1370, 1376 (1978), enforced, 631 F.2d 944 (D.C. Cir. 1980); <u>Cement</u>

<u>Masons Union Local 337 (Cal. Ass'n of Employers),</u> 190 N.L.R.B. 261, 261 n.1

(1971).[2]

The Eleventh Circuit has stated that "coerce" as used in section 8(b)(4)(ii)

includes much more than traditional picketing and that it includes any "nonjudicial

acts of a compelling or restraining nature, applied by way of concerted self-help

consisting of a strike, picketing, or other economic retaliation and pressure in the

background of a labor dispute." <u>Kentov v. Sheet Metal Workers',</u> *supra* 418 F.3d at

1264[3].   In <u>Kentov,</u> in order to highlight its labor dispute with a construction

---

[2] For an overview of the law of secondary boycotts, see Richard A. Bock, <u>Secondary</u>
<u>Boycotts:  Understanding  NLRB Interpretation of Section 8(B)(4)(B) of the</u>
<u>National Labor Relations Act,</u> 7 U. Pa. J. Lab. & Emp. L. 905 (2005)( a copy is
contained in the Appendix).

[3] Plaintiffs recognize that in a subsequent proceeding involving the same facts the
D.C. Circuit found the union's conduct was not unlawful.  However, the court did so
based on the specific facts before it, not based on a rule that handbilling is per se
always lawful.  Moreover, this Court is not bound by the D.C. Circuit's
determination, which Plaintiffs, other courts and the National Labor Relations Board

contractor working on a project at a hospital, the union staged a mock funeral procession in front of the hospital, with four representatives carrying an object resembling a coffin, another representative dressed as the grim reaper, and representatives distributing handbills to persons entering and leaving the hospital. The Eleventh Circuit held that, notwithstanding that the procession was orderly and notwithstanding the absence of traditional picket signs, there was reasonable cause to believe the union violated Section 8(b)(4)(ii)(B), since one of its' objectives was to "exert pressure on the hospital to cease doing business with the non-union contractor, with whom the union had a primary labor dispute," Id. at 1262, 1266. The Eleventh Circuit specifically noted that the absence of traditional picket signs was irrelevant, where, as in this case, the union's activity is equivalent to secondary picketing and patrolling, which the court described as,

> the important feature of picketing appears to be the posting by a labor organization … of individuals at the approach of a place of business to accomplish a purpose which advances the cause of the union, such as keeping employees away from work or keeping customer's away from the employer's business.

Id. at 165 (citation omitted).

---

("Board") contend was incorrect.  See Sheet Metal Workers, Local 15 v. NLRB, 491 F.3d 429 (D.C.Cir. 2007).

## 2.     The "Totality of Circumstances" Test

The Union argues, in essence, that whether union conduct amounted to an unlawful secondary boycott is simple – if the union used handbills or banners the conduct was not unlawful, but rather, that it was activity protected by the First Amendment.  This assertion is contrary to established precedent holding that the determination of lawfulness depends on the "totality of the circumstances" and that not all handbills, banners and the like are constitutionally protected.  <u>Mine Workers (New Beckley Mining)</u>, 304 NLRB 71, 73, 1991 WL 163077 (1991), *enfd.* 977 F.2d 1470 (D.C. Cir. 1992).

The former Fifth Circuit adopted the "totality of the circumstances" test in <u>Texas Distributors, Inc. v. Local 100</u>, 598 F.2d 393, 399 (5th Cir. 1979)[4].  In that case, the court held that in evaluating whether a union has engaged in an unlawful secondary boycott, the court must consider the totality of the circumstances.  The court further held that certain factors are an "indicia of an improper motive."  Such factors include, but are not limited to: (1) any understanding between a secondary employer and the union that work interruptions will cease if and when a picket is removed; (2) statements or otherwise, by the union that a secondary employer was

---

[4] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to the close of business September 30, 1981.

not using good business judgment in doing business with a primary employer; and (3) the failure of the picketer to answer inquiries of others as to the purpose of the picketing. Id. at 399. See also Abreen Corp. v. Laborers' Int'l Union, 709 F.2d 748, 752 (finding a violation based on the totality of circumstances); General Teamsters Local 126 (Ready Mix Concrete, Inc.), 200 NLRB 253 (1972), (finding that the totality of the circumstances showed that the union's object was to enmesh a neutral in its primary labor dispute with the supplier, notwithstanding the union's technical compliance with all picketing rules.)

Moreover, handbills and banners, such as those at issue in this case, are part of the totality of the circumstances and depending on the circumstances they may be coercive in themselves. See e.g., Teamsters, Chauffeurs, Warehousemen & Helpers, Local 390 (Herbert A. Spencer, 119 NLRB 857 n.9 (1957) (verbal or written statements by union agents is direct evidence of unlawful secondary activity); accord, Truck Drivers & Helpers, Local 728 v. NLRB, 249 F.2d 512 (D.C.Cir. 1957); UFCW, Local P-9 (Hormel & Co.), 281 NLRB 986, 988 (1986) (handbills not protected by the First Amendment and union committed an independent violation of Section 8(b)(4) when it distributed handbills of a coercive nature); Mid-Atlantic Regional Council of Carpenters and Goodell, Devries, Leech & Dann, LLP and Starkey Construction Company, Inc., 2006 WL 572716 (NLRB Div. of Judges

2006) (stationary "bannering" in the manner conducted is coercive secondary conduct.)

In addition, coercive inducements to third parties contained in handbills, letters and other similar documents, can also serve as evidence of the union's unlawful object.  See e.g., Pennsy Supply Co., 313 NLRB 1148, 1153 (1994); General Truck Drivers, Warehousemen, Helpers and Automatic Employees of Contra County, Local 315 (The Atchison, Topeka and Santa Fe Railway), 306 NLRB 616, 627 (1994).  Indeed, the Act itself specifies that handbills that actually induce neutral employees to stop working violate Section 8(b)(4)(ii), and thus handbilling with coercive effects violate the so called publicity proviso, relied upon by the Defendant in its motion. DeBartolo Corp. v. Florida Gulf Coast Trades Council, 485 U.S. 568, 582 (1988).

Moreover, there are numerous cases pending before the Board addressing the lawfulness of bannering and related handbilling and letters.  (See Plaintiffs'Appendix).  See e.g., Local Union No. 1827, United Brotherhood of Carpenters and Joiners of America, et al., (United Parcel Service, Inc.), Case No. 28-CC-933, 2003 NLRB LEXIS 256, 2003 WL 21206515 (A.L.J. decision, May 9, 2003)[5]  (banners near the entrances of neutral employers at various job sites and

---

[5] A copy of this opinion is contained in the Appendix hereto.

identifying only the neutral employers were not pure speech protected under DeBartolo II, but instead constituted picketing, since they necessarily conveyed message that dispute was with the neutral employers, and evidenced secondary motive); Mid-Atlantic Regional Council of Carpenters (Goodell, Devries, Leech & Dann, LLP), 2006 WL 572716 (N.L.R.B. Div. of Judges)(March 2, 2006), citing Kentov v. Sheet Metal Workers International Association Local 15, *supra* (Section 8(b)(4) violated when union representatives held banner in front of law firm that contracted with a non-union contractor, stating "labor dispute" and law firm's name, since conduct was akin to traditional picketing and was done to coerce law firm to cease doing business with contractor); Southwest Regional Council of Carpenters (Held Properties), 2004 NLRB LEXIS 159 (A.L.J. decision, April 2, 2004)(banner placed within fifty feet of entrance to neutral employer's premises violated Section 8(b)(4)).

Indeed, the Union's contention that "the bannering and handbilling activity of the type conducted by the Carpenters in Atlanta do not constitute a violation of Section 8(b)(4))ii)(B)" (Def. Memorandum of Law, p. 8) is completely undermined by a jury verdict rendered one year ago in this very Court where the jury found that the Carpenters' similar activities conducted in Atlanta **did** violate Section 8(b)(4))ii)(B). Fidelity Interior Contractors v. Southeastern Carpenters Regional

Council, N.D. Ga. Case No. 1:05-CV-2938-RWS (Copies of the Court's Orders denying the Defendant's motion to dismiss, motion for summary judgment, and motion for judgment as a matter of law are contained in the Appendix). Moreover, in that same case, a Judge of this Court properly recognized that the "totality of circumstances" standard was the standard for the jury to apply in assessing whether the union's conduct was lawful under the Act. (*See* Order Denying Defendant's Motion for Judgment as a Matter of Law, contained in the Appendix).

### 3. Not All Handbilling, Bannering and Like Conduct is Constitutionally Protected

Notwithstanding the forgoing, relying largely on DeBartolo Corp. v. Florida Gulf Coast Trades Council, 485 U.S. 568 (1988) ("DeBartolo II"), the Union argues that anything it labels as "speech" is outside the prohibitions of 29 U.S.C. § 158 (b)(4). However, as the Union acknowledges in its Memorandum at p. 3, "The prohibition of Section 8(b)(4) is keyed to the coercive nature of the conduct, whether it is picketing **or otherwise**." NLRB v. Fruit & Vegetable Packers & Warehouseman (Tree Fruits), 377 U.S. 58, 68 (1964)(emphasis added). Moreover, the Court in DeBartolo II, did not, as the Union indicates, state that all bannering, handbilling and similar conduct was constitutionally protected speech. Rather, the Court simply found that the handbilling in the case before it did not 'threaten, coerce, or restrain any person' to cease doing business with another, within the

meaning of Section 8(b)(4)(ii)(B).  *Id.* at 578. *See also* <u>George v. National Assoc. of Letter Carriers</u>, 185 F.3d 380, 389-390 (5th Cir. 1999) (noting that the <u>DeBartolo</u> court distinguished coercion and picketing from peaceful handbilling no less than ten times.)

Furthermore, the Supreme Court has rejected the argument that Section 8(b)(4) violates the First Amendment, stating, "[T]he prohibition of inducement or encouragement of secondary pressure by Section 8(b)(4)(A) carries no unconstitutional abridgment of free speech." <u>International Brotherhood of Elec. Workers, Local 501 v. NLRB</u>, 341 U.S. 694, 705 (1951).  The Court also recognized that "[T]he words induce or encourage are broad enough to include in them every form of influence and persuasion."  Id. at 701-02.  Since then, courts have held that speech that threatens, coerces, or restrains, or that is conducted in a coercive manner, is not constitutionally-protected free speech.  See <u>BE&K Construction Co. v. Will & Grundy Counties Building Trades Council</u>, 156 F.3d 756, 768-69 (7th Cir. 1998) (whether a union has crossed the line from mere announcement to a threat is a fact-specific inquiry); <u>Service Employees International Union, Local 87 (Trinity Building Maintenance Co.)</u>, 312 NLRB 715, 747-48 (1993), enf'd, 103 F.3d 139 (9th Cir. 1996) (other conduct and statements rendered impermissible what might have otherwise been a permissible statement). <u>Warshawsky and Co. v. NLRB</u>, 182 F.3d

948 (D.C.Cir. 1999) (the First Amendment does not protect conversations and handbilling directed at, and only at, neutral employees.)

Similarly, <u>Sheet Metal Workers, Local 15 v. NLRB</u>, 491 F.3d 429 (D.C.Cir. 2007), relied upon by the Union, does not help the Union's case on a motion to dismiss. In that case, the court found the union's conduct was protected activity, only after reviewing all of the specific actions engaged in by the union and then concluding that the **totality** of the specific conduct, was not coercive. <u>Id</u>. at 437-38[6]. More than once, however, the court recognized that the general character of the union's conduct could be unlawful if other facts also existed, for example, if during the mock funeral the union had interfered with hospital patrons, either symbolically or physically[7]. <u>Id</u>.

---

[6] As many of the cases cited throughout this Memorandum also demonstrate, there are many cases showing that the determination of whether activity is protected or unlawful requires an examination into all of the facts and must be decided on a case by case basis. See also <u>UFCW, Local 1776 (Carpenters Health & Welfare Fund)</u>, 334 NLRB 507 n.3 (2001)(holding that the issue of whether union activities are coercive must be determined on a case-by-case basis); <u>International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 433 v. NLRB</u>, 598 F.2d 1154, 1159 (C.A. 9, 1979)(it is necessary to look at the unique factual circumstances in each case to determine whether the union's activities violated Section 8(b)(4)).

[7] Moreover, while the D.C. Circuit decision does not support the Union's position that the secondary boycott claim must be dismissed as a matter of law, it is important to note that the Eleventh Circuit granted an injunction prohibiting the conduct as a violation of Section 8(b)(4)(ii)(B). See <u>Kentov v. Sheet Metal Workers</u>, *supra*.

Moreover, while Circle contends that the handbilling and bannering at issue was not protected by the First Amendment, even if the Court ultimately finds otherwise, Circle has alleged other unlawful conduct as well.  For example, Circle alleges that the Union made threats which were coercive and a form of prohibited secondary conduct.  See, e.g., Complaint ¶ 12, 13.  In the labor context, verbal statements are not pure speech, but rather a form of prohibited secondary conduct even if unaccompanied by picketing, especially insofar as they induce a neutral employer to cease doing business with the primary employer, such as alleged herein. See Service Employees, Local 254 (Janitronic, Inc.), 271 NLRB 750 (1984)(union threat to picket neutral employer if it did not cease doing business with the primary employer unlawful secondary activity); Teamsters, Local 917 (Bush Realty Ass'n), 307 NLRB 1419, 1422 (1992) (finding independent violation of Section 8(b)(4) where union agent made threatening statements to supervisor of neutral employer).

Additionally, Circle has made allegations of common situs picketing, including that the Union did not abide by the rules that govern such picketing, by, among other things, sending neutral employers threatening letters without assuring them that any picketing would comply with applicable requirements.  See Complaint, par. 13.  The Union acknowledges these allegations and seems to argue that Circle has not alleged facts to **prove** that the Union's actions were unlawful.

However, Circle, of course, was not required to prove its case in its Complaint, but, rather only to allege facts which if true would prove a violation of the law.

Furthermore, the Union recognizes that the lawfulness of common situs picketing depends on intent. See Union Memorandum p. 6. Clearly the Court cannot determine the Union's intent on a motion to dismiss. In making its argument the Union also brushes off all evidence of its intent. For example, it argues that the threatening letters are irrelevant by suggesting, incorrectly, that any threat to picket is lawful, relying on NLRB. v. Ironworkers Local 433, 850 F.2d 551, 555 (9th Cir. 1988). Ironworkers Local 433, however, does not support the Union's argument. Rather, it merely stands for the proposition that Section 8(b)(4) does not forbid a union from threatening a secondary employer that it will picket the **primary employer**. The Ninth Circuit made clear, however, that Section 8(b)(4) forbids threats of **secondary picketing**, as Circle alleges and will ultimately prove occurred in this case. *Id*. at 855. See Complaint ¶¶ 12 and 13. See also Carpenters Local 316 (Thornhill Construct.), 283 NLRB 81 (Section 8(b)(4) violated when, upon being told a separate gate would be set up for the primary employer, union agent stated, "gates don't matter, we don't picket gates, we picket job sites."); Local Union No. 369, International Brotherhood of Electrical Workers, AFL-CIO (Garst-Receveur Constr. Co., Inc., 229 NLRB 68 (1977) (statement that, "a picket line at

any gate constitutes an invisible picket line around the entire project" showed an unlawful intent to expand the picket to all gates and to all entering the site).

The Union also ignores that the letters and its other conduct did not comply with the Moore Dry Dock rules and with Board law, governing common situs picketing, which is strong evidence of unlawful intent. Sailors' Union of the Pacific (Moore Dry Dock), 92 NLRB 547, 549 (1950) (setting out the minimum standards that must be met for common situs picketing to be deemed primary); Electrical Workers, Local 861 (Plaunche Electric), 135 NLRB. 250, 255 (1962) (Moore Dry Dock standards are to be used as aides in determining whether union acted with secondary intent); Ramey Const. Co., Inc. v. Local U. No. 544, Painters, Etc. 472 F.2d 1127, 1131(5th Cir. 1973) (failure to abide by Moore Dry Dock standards strongly indicative of secondary intent.

### 4. Conclusion Regarding Circle's Secondary Boycott Claim

As shown above, whether the Union engaged in an unlawful secondary boycott requires a fact-specific inquiry into **all** of the Union's conduct, including, but not limited to its handbilling and bannering.[8]  This makes disposition by a

---

[8] Circle's Complaint also contains a claim under Section 8(B)(4)(ii)(A) of the Act, which makes it an unlawful object for a labor organization to force or require any employer to join any labor or employer organization. Defendant's argument that because the "entire thrust" of Plaintiff's Complaint addresses the Defendant's unlawful secondary boycott activities under Section 8(B)(4)(ii)(B), the claims stated

motion dismiss, which can only be granted if the Complaint alone shows that there is no set of facts which would entitle the plaintiff to relief, inappropriate. Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P., 144 F.3d 732 (11th Cir. 1998) (dismissal for failure to state claim may not be granted unless defendant shows that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief.)  This is especially true where, as in a secondary boycott case, one of the facts which must be determined is the Union's motive.    See generally Batey v. Stone, 24 F.3d 1330, 1336 (11th Cir. 1994)(summary judgment in employment discrimination case inappropriate where there are issues of motive.)

### C.    The "Totality of the Circumstances" Test Allows Consideration of Acts That May Have Occurred Outside the Statute of Limitations

Defendant's argument that Circle cannot rely on evidence of conduct outside the two year limitations period is legally and factually inaccurate[9].  It is well settled

---

under Section  8(B)(4)(ii)(A) should be dismissed ignores the reality that while much of Circle's Complaint addresses Defendant's violations of 8(B)(4)(ii)(B), the Complaint also pleads violations of 8(B)(4)(ii)(A).  See Complaint, pars. 29, 30. However, Defendant does not challenge the factual sufficiency of those pleadings.

[9] The Union's reliance on evidence that is not part of the Complaint in support of its argument that Plaintiffs' claims are barred by the statute of limitation is improper and should not be considered.  See the Union's Exhibits B through H.  In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a court must limit itself to facts stated in the complaint or in documents thereto or incorporated by reference. If a court wishes to consider additional material, Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to

that ". . . earlier events may be utilized to shed light on the true character of matters occurring within the limitations period. . ." Local Lodge 1424 v. NLRB (Bryan Mfg. Co.) 362 U.S. 411, 416-417 (1960).  Moreover, reliance on such acts as part of a continuous course of conduct that continued into the actionable period is completely appropriate, even assuming arguendo that such acts might not be independently actionable.  Id.; Nat'l. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 88 FEP Cases 1601 (2002).  See also NLRB v. Dynatron/Bondo Corp. 176 F.3d 1310 (11th Cir. 1999), citing Redd-I Inc., 290 NLRB 1115, 1118, 129 LRRM 1229 (1988) (timely allegations of unfair labor practice can permit pursuit of untimely allegations if the timely and untimely allegations are of the same class and if they arise from the same set of facts or sequence of events.) The most obvious answer to the union's argument, however, is stated in the Local Lodge 1424 v. NLRB, 362 U.S. at 417 n. 6:

> As I interpret the statute however, Section 10(b) enacts a statute of limitations and not a rule of evidence. It forbids the issuance of complaints and, consequently, findings of violation of the statute in conduct not within the 6 months' period. But it does not, as I construe it, forbid the introduction of relevant evidence bearing on the issue as to whether a violation has occurred during the 6 months' period. Events obscure, ambiguous, or even meaningless when viewed in isolation may, like the component parts of an equation, become clear, definitive, and informative when considered in relation to other action. Conduct,

---

conduct necessary discovery and to submit pertinent material. See Goldman v. Belden, 754 F.2d 1059, 1065-66 (2d Cir.1985).

like language, takes its meaning from the circumstances in which it occurs. Congress can scarcely have intended that the Board, in the performance of its duty to decide the validity of conduct within the 6 months' period, should ignore reliable, probative, and substantial evidence as to the meaning and the nature of the con-duct. Had such been the intent, it seems rea-sonable to assume that it would have been stated.

*quoting* <u>Axelson Mfg. Co.</u>, 88 NLRB 761, 766, 25 LRRM 1388.

**D.** **<u>Plaintiff Circle Makes a Sufficient Claim for Unfair Competition Under 15 U.S.C. § 1125(a)</u>**

Plaintiff Circle's unfair competition claim is adequately pled in ¶¶ 89 - 101 of the Complaint.  Defendant requests dismissal of this claim based on the argument that it did not make "commercial use" of The Circle Group Mark. Contrary to Defendant Union's contentions, whether or not Defendant Union made "commercial use" of Plaintiff's Circle Group Mark is not germane to deciding the instant Motion. Defendant's arguments regarding "commercial use," as well as Defendant's application of, and arguments related to, the likelihood of confusion factors focus on the <u>merits</u> of Plaintiff's claims, not whether Plaintiff adequately pled a claim for which relief can be granted by this Court – which is the only issue for consideration under the Defendant's Motion to Dismiss.

Defendant's attempt to pigeon-hole Plaintiff's Unfair Competition Claim into whether or not it engaged in "commercial use" of Plaintiff's Circle Group Mark runs

contrary to the clear weight of authority which has defined such actions as flexible and encompassing several proscribed acts.  See Manufacturing Research Corp. v. Greenlee Tool Co., 693 F.2d 1037 (11th Cir. 1982) (dissent stating "Unfair competition is a generic term that covers several categories of specific torts."); Golden Nugget, Inc. v. American Stock Exchange, Inc., 828 F.2d 586, 591 (9th Cir. 1987) ("[T]he tort of unfair competition is *extremely* flexible)(emphasis added). "Unfair competition is not a tort with specific elements; it describes a general category of torts which courts recognize for the protection of commercial interests." Rehabilitation Specialists, Inc. v. Koering, 404 N.W.2d 301, 305 (Minn. Ct. App. 1987).

Indeed, one authoritative commentator has concluded:

It is as specious to attempt a sweeping, all-inclusive definition of "unfair competition" as to try to define the legal term "reasonable." The term "unfair competition," as used to describe a generic class of commercial activities, is too abstract and subjective when divorced from concrete examples. . . . [T]he meaning of the term is fluid, having been refined on a case-by-case basis by lawyers and judges.

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 1:8[C], 4th Ed. (1996).

The generally accepted definition of unfair competition, as well as the judicial refinement of which McCarthy spoke, clearly contemplates the action asserted by Plaintiff herein.  See American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494

F.2d 3 (5th Cir. 1974) ("The law of unfair competition is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."); see also Bodge v. Salesworld, Inc., 154 Ga. App. 65, 267 S.E.2d 505 (1980) (cause of action exists where one maliciously and wrongfully, and with intent to injure, harms business of another).

Use of restaurant trademarks by a non-profit organization in leaflets regarding restaurant labor practices was held to cause a likelihood of consumer confusion, even if organization was not competing with restaurants or using mark for financial gain. See SMJ Group, Inc. et al.. v. 417 Lafayette Restaurant LLC et al., 439 F.Supp.2d 281 (S.D.N.Y. 2006). In SMJ Group, a finding of likelihood of consumer confusion was based upon the determination that individuals receiving leaflets would initially think that the leaflets were associated with restaurants and that such individuals would only realize that the leaflets were not associated with restaurants after opening leaflets and reading critical message inside. This concept of "initial interest confusion" is sufficient to trigger protection under the Lanham Act. See SMJ Group, at 290; also see, Brookfield Communications, Inc. v. West Coast Entertainment Corp. 174 F.3d 1036, 50 U.S.P.Q.2d 1545 (9th Cir. 1999).

The allegations found in ¶¶ 89 – 101 of the Complaint adequately states a claim for Plaintiff's Unfair Competition Claim under 15 U.S.C. § 1125(a) and, accordingly, Defendant Union's Motion to Dismiss should be denied.

### E. **Plaintiff Circle Makes a Sufficient Claim for Common Law Trademark Infringement and Unfair Competition**

Plaintiff's common law trademark infringement and unfair competition claims are adequately pled in paragraphs 106 – 109 and 110 - 113 of the Complaint, respectively. Defendant requests dismissal of this claim based on the argument that "[Plaintiff] has failed to make out a valid claim of likelihood of confusion under the Eleventh Circuit test" and because "[Plaintiff's] federal trademark claims are due to be dismissed." See Motion to Dismiss, at pg. 27. Notwithstanding the fact that Defendant's allegations merely amount to an unproven legal conclusion that should be disregarded in its entirety by this Court, Defendant is again holding Plaintiff to a higher standard than required to overcome the instant Motion to Dismiss.

The only issue for consideration under the instant Motion is whether Plaintiff adequately pled a claim for which relief can be granted by this Court, not whether Plaintiff has adequately proven its common law trademark infringement and unfair competition claims on the face of the pleadings. The allegations found in ¶¶ 106 – 109 and 110 - 113 of the Complaint adequately state claims for common law

trademark infringement and unfair competition and, accordingly, Defendant's Motion to Dismiss should be denied.

###    F.    Plaintiff Circle Makes a Sufficient Claim for Cybersquatting Under 15 U.S.C. § 1125(d)

Plaintiff's Cybersquatting claim is adequately pled in ¶¶ 102 – 105 of the Complaint. Defendant requests dismissal of this claim based on the argument that Plaintiff Circle has not established the elements required to succeed in a claim under the Anti-Cybersquatting Protection Act ("ACPA"). Again, contrary to Defendant's contentions, whether or not Plaintiff has satisfactorily established the elements of a claim under the ACPA is an argument related to the <u>merits</u> of Plaintiff's claims and is not germane to deciding the instant Motion. Whether or not the www.thecirclegroupstinkx.info domain name is "confusingly similar" to Plaintiff's Circle Group Mark (<u>see</u> Motion to Dismiss, at pg. 23) or whether Defendant Union has a "bad faith intent to profit" from use of the subject domain (<u>see</u> <u>Id</u>., at pg. 25) is <u>wholly inapposite</u> to instant Motion.

The only issue for consideration under the instant Motion is whether Plaintiff adequately pled a claim for which relief can be granted by this Court. The allegations found in ¶¶ 102 - 105 of the Complaint adequately states a claim for Cybersquatting under 15 U.S.C. § 1125(d) and, accordingly, Defendant Union's Motion to Dismiss should be denied.

**G.    Circle's State Law Claims are Not Preempted**

The Union contends that Circle's state law claims are preempted by federal law under the <u>Garmon</u> doctrine.  As the Union acknowledges, however, there are exceptions to <u>Garmon</u>, including when the conduct at issue "…touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act…" See Union's Memorandum p. 30 quoting <u>In Local 926 IUOE v. Jones</u>, 460 U.S. 669, 676 (1983). Courts have repeatedly found claims such as those made in this case are not preempted. In <u>Construction Workers v. Laburnum Construction Corp.</u> 347 U.S. 656 (1954), the employer recovered under state law for threats even though the activity was arguably prohibited by the Act, since "Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct." <u>Laburnum</u>, 347 U.S. at 663-64.

Other cases similarly permit state law claims for intentional torts, in the context of labor disputes. In <u>Farmer v. Carpenters Local 25</u>, 430 U.S. 290 (1977), the Supreme Court held that a state claim for intentional infliction of emotional distress was not preempted notwithstanding that the harassment underlying the claim "might form the basis for unfair labor practice charges before the Board,"

since any Board action and the state tort claims action would be focused on different issues and the risk of state court interference with federal concerns did not outweigh the state's interest in the conduct complained of. As the Court stated,

> inflexible application of the [*Garmon*] doctrine is to be avoided, especially where the state has a substantial interest in regulation of the conduct at issue and the state's interest is one that does not threaten undue interference with the federal regulatory scheme.

430 U.S. at 302.

In <u>Pennsylvania Nurses Association v. Pennsylvania State Education Association</u>, 90 F. 3d 797, 152 LRRM 2901 (3rd Cir. 1996), cert. denied, 519 U.S. 1110 (1997, the Third Circuit refused to find a state law defamation claim preempted when it arose from a union organizing campaign, a matter closely regulated by the Labor Act. In rejecting the defendant's <u>Garmon</u> argument, the court found there was no suggestion by the Supreme Court that a defamed party should be limited to a single forum. <u>Id</u>. at 806. See also Other Supreme Court cases have allowed state actions to proceed and, <u>Linn v. Plant Guard Workers Local 114</u>, 383 U.S. 53 (1966) (rejecting preemption in defamation case); <u>Sears, Roebuck and Co. v. Carpenters District Council (San Diego County)</u>, 436 U.S. 180 (1978) (rejecting preemption in .trespass case).

In <u>Machinists v. Gonzales</u>, 356 U.S. 617 (1958), the Court allowed a state court action brought by an expelled union member because the Board could not

provide the union member the relief that California gave him "according to its local law of contracts and damages," even though the union conduct might have been a violation of Section 8(b)(2) of the Labor Act. In Brown v. Hotel and Restaurant Employees Local 54, 468 U.S. 491 (1984), the Court held that Section 7 of the Act did not preempt state regulation of collective bargaining representatives, and concluded that Congress did not intend to bar states from adopting different and more stringent qualifications for union office than did Section 7 of the Act. In Belknap, Inc. v. Hale, 463 U.S. 491 (1983), the Court upheld a state court's jurisdiction over an action for misrepresentation and breach of contract against an employer by strike replacements who were displaced by reinstated strikers after allegedly having been promised permanent jobs, finding that the state had a "substantial interest in protecting its citizens from misrepresentations [and breaches of contracts] that have caused them grievous harm." 463 U.S. at 511.

Similarly, the Supreme Court has repeatedly rejected preemption defenses when confronted with a claim that a state's statutes requiring minimum benefits or severance payments interfere with the freedom of parties to collectively bargain such issues. See Metropolitan Life Insurance Co. v. Massachusetts Travelers Insurance Co., 471 U.S. 724 (1985); Fort *Falifax Packing Co. v. Coyne*, 482 U.S. 1 (1987).

The Sixth Circuit even allowed an employer's claim for fraudulent misrepresentation related to the scope of project labor agreements to proceed over a Garmon preemption argument. The court found that although bad-faith bargaining was clearly an unfair labor practice, the union's alleged conduct was sufficiently dissimilar from most labor disputes as to be merely a peripheral concern of the Labor Act and that it was instead more akin to the type of business disputes traditionally regulated by state law. Northwestern Ohio Administrators v. Walcher and Fox, Inc., 270 F. 3d 1018 (6th Cir. 2001), cert. denied, 535 U.S. 1017 (2002).

The union correctly cites Teamsters Local 20 v. Morton, 377 U.S. 252 (1964), for the proposition that Section 303 preempts some state claims. The Court therein suggested that Section 303 generally preempts state claims based on conduct violative of Section 8(b)(4). However, subsequent cases indicate that there are many state claims that are not preempted even though related to Section 303 claims. In fact following Morton, the Court in Mineworkers v. Gibbs, 383 U.S. 715 (1966), allowed a pendant state claim for punitive damages as part of a Section 303 action that arose out of the union's violent conduct, even where the Court found no violation of Section 303.

Applying Gibbs, the Ninth Circuit upheld a finding that a union's mass picketing constituted tortious interference of the company's employment contracts.

Rainbow Coaches v. Teamsters Local 996, 704 F. 2d 1443 (9th Cir. 1983). The court understood Gibbs to mean that "when the objects of a union's conduct is protected but the tactics used to attain that end are not, . . . the district court should award damages only for the losses directly resulting from the unlawful activity." 704 F. 2d at 1448. The Third Circuit, also relying on Gibbs, refused to dismiss state tortious interference claims on the ground of preemption. C&K Coal Co. v. Mineworkers, 704 F. 2d 690 (3rd Cir., 1983). See also Sun Ref. and Mktg. Co. v. Building and Construction Trades Council (Philadelphia and vicinity), 117 LRRM 2127 (E.D. PA. 1984) (threatening and intimidating acts in violation of Section 8(b)(4) established claim for tortious interference with performance of contracts); Virginia Electric and Power Co. v. International Brotherhood of Boilermakers, 103 LRRM 3144 (W.VA. 1980) (damages awarded for intentional interference claim joined with federal Section 303 claim)[10].

In short, the basis of federal preemption is considerably more complicated than that suggested by the Union. Most of the cases cited in the proceeding paragraph are post-Garmon rulings, and nevertheless reject the preemption argument.

---

[10] It should be noted that the Supreme Court just agreed to hear a case involving tortious interference claims in a labor dispute. Granite Rock Co. v. Int'l Bhd. Of Teamsters, No. 08-1214 (2009).

### H. Laidler's Claim for Invasion of Privacy

The union's motion does not directly address the preemption argument as to Plaintiff Laidler's invasion of privacy claim, although it does claim that such a claim fails to state a cause of action. It is submitted that a citizen's right of privacy is a matter deeply rooted in local interests. This applies particularly in Georgia, the first state to recognize the common law right of privacy.

Surely, placing a labor dispute sign or banner in a neighborhood unrelated to any labor dispute where an employee's minor children are in a daycare center, intrudes upon Plaintiff Laidler's seclusion or solitude or into her private affairs. Such issues are particularly inappropriate to resolve on a Motion to Dismiss, with the totality of facts needing to be examined to determine the interests of the party making the intrusion, as against the plaintiff's privacy interests. See generally Yarbray v. Southern Bell Telephone and Telegraph Co., 261 Ga. 703 (1991); Association Services, Inc. v. Smith, 249 Ga. App. 629 (2001) (jury issue presented over whether the Defendant's conduct constituted an unreasonable intrusion into Plaintiff's seclusion and private affairs, particularly in light of conflicting evidence).

As a matter of fact, there are a number of state cases prohibiting a union from demonstrating in residential neighborhoods because of such privacy interests. See, e.g., Northeast Auto-Marine Terminal v. Longshoreman's Assoc. and Local 1588,

184 LRRM 2828 (D.N.J. 2008); *DeGregory v. Giesing*, 95 LRRM 2517 (D.Conn. 1977).

I.    **If Plaintiff's Pleadings are Ruled Insufficient, the Court Should Grant Leave to Amend**

Should the Court find that more detailed allegations are necessary to maintain its claims, Plaintiff requests leave to amend its pleadings in accordance Federal Rule of Civil Procedure 15 ("Rule 15"), as well as in accordance with applicable law. "[I]n light of the liberality under the Federal Rules accorded requests to amend the pleadings, the dismissal of this allegation should not hinge merely on a pleading deficiency."  Blackwell v. Power Test Corp., 540 F.Supp. 802, 809 (D.N.J. 1981); aff'd, 688 F.2d 818 (3rd Cir. 1982); see also Rolite, Inc. v. Wheelabrator Envtl. Sys., Inc., 958 F.Supp. 992 (E.D. Pa.1997).  Under Rule 15, an amendment is considered futile only if it cannot withstand a motion to dismiss.  Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3rd Cir. 1988).  To the extent that it may only need to allege a mere handful of additional facts which would entitle it to relief (Plaintiff contending that such amendment is not truly necessary), Plaintiff should be granted leave to amend.

## III. CONCLUSION

For all of the aforementioned reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.  It follows that Defendant's Motion to Stay Discovery should likewise be denied.

Respectfully submitted this the 22<u>nd</u> day of February, 2010.

<u>/s/ James W. Wimberly, Jr.</u>
James W. Wimberly, Jr.
Georgia Bar No.769800
Kathleen J. Jennings
Georgia Bar No. 394862

Wimberly, Lawson, Steckel,
Schneider & Stine, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404)365-0900
(404)261-3707 (Facsimile)
jww@wimlaw.com (Email)
kjj@wimlaw.com (Email)

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **THE CIRCLE GROUP, L.L.C.** | ) | |
| **And JOYCE LAIDLER,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **PLAINTIFFS,** | ) | **NO. 1:09-CV-3039** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE SOUTHEASTERN CARPENTERS** | ) | |
| **REGIONAL COUNCIL, OF THE** | ) | **JURY DEMAND** |
| **UNITED BROTHERHOOD OF** | ) | |
| **CARPENTERS AND JOINERS** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed ***PLAINTIFFS THE CIRCLE GROUP L.L.C. AND JOYCE LAIDLER'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS*** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert M. Weaver
Nakamura, Quinn, Walls, Weaver & Davies LLP
Suite 380. 2700 Highway 280 East
Birmingham, AL 55223
rweaver@nqwlaw.com

Tessa A. Warren
Nakamura, Quinn, Walls, Weaver & Davies LLP
3516 Covington Highway
Decatur, Georgia 30032
twarren@nqwlaw.com

This <u>22nd</u> day of February, 2010.

<u>s/James W. Wimberly, Jr.</u>
James W. Wimberly, Jr.
Georgia Bar No. 769800

Wimberly, Lawson, Steckel,
Schneider & Stine, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia  30326
(404)365-0900

*Attorney for Plaintiffs*