IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE CIRCLE GROUP, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 1:09-CV-3039 |
| ) | |
| ) | |
| SOUTHEASTERN CARPENTERS ) | |
| REGIONAL COUNCIL, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Defendant Council, and for its reply to Plaintiffs' response shows this Court the following:

### I. Circle's Secondary Boycott Arguments

In its response Circle fails to address the starting point of the Council's motion regarding allegedly unlawful secondary activity: Congress did not prohibit all secondary activity. Section 8(b)(4) "describes and condemns specific union conduct directed to specific objectives"; only secondary activity having a prohibited object is unlawful. Carpenters Local 1976 v. NLRB, 357 U.S. 93, 98 (1958). The statute is explicit: contrary to Plaintiffs' suggestion[1], a union's intent

---

[1] Response at p. 18.

is not relevant; the statute is directed at unlawful *objects* of a union's activity. Moreover, threats and coercion are entirely lawful unless combined with an unlawful *object*. Thus, while "totality of the circumstances" may be an appropriate analysis for consideration of a union's actions and object in a particular instance, where a jury is considering a union's activity directed at multiple parties, at multiple locations, over several years, lines must be drawn between lawful and unlawful conduct (and between conduct directed at different parties, at different places, and at different times).

The (old) Fifth Circuit made this point very clearly. In Ramey Constr. Co., Inc. v. Painters Local 544, 472 F.2d 1127 (5th Cir. 1973), the court was presented with a case involving union activity directed at multiple employers on eight different jobsites. In its review the Fifth Circuit took into account the "totality of the circumstances" analysis urged by the plaintiffs on appeal (and by Circle here). In so doing the court noted that "a proscribed purpose was found by the district court at one of the eight construction sites"[2], but nevertheless dismissed the entire case. In other words, the court did not rely on evidence of an unlawful object at one site and apply it to activity at other sites. Moore Dry Dock itself involved

---

[2] Id. at 1135.

picketing at only one location, directed at only one employer. Sailors Union of the Pacific (Moore Dry Dock), 92 NLRB 547, 548-550 (1950).

Furthermore, Circle ignores the Supreme Court's proscription against basing a damage award on lawful conduct. NAACP v. Claiborne Hardware, 458 U.S. 886, 910-911 (1982); Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971). Given the scope of the Council's campaign and the period of time over which its activities were conducted, there is a particular danger of blurring the line between lawful and unlawful conduct, and therefore running afoul of the Supreme Court's mandate.

Circle relies on the Eleventh Circuit's decision affirming grant of a preliminary injunction in Kentov v. Sheet Metal Workers Local 15, 418 F.3d 1259 (11th Cir. 2005). Given the limited issue before the Eleventh Circuit (whether or not cause was established to justify the preliminary injunction), the Council submits that the decision is of limited applicability. The more authoritative decision on the issues raised herein is the D.C. Circuit's decision on the merits. Sheet Metal Workers Local 15 V. NLRB, 491 F.3d 429 (D.C. Cir. 2007). Stating to this Court that the NLRB "disagrees" with the D.C. Circuit is a throw-away. As previously demonstrated to the Court, the NLRB has acknowledged the D.C.

Circuit's interpretation of the statute in that case. See Ex. A, attached to Council's Memorandum in Support of Motion to Dismiss.

Circle's reliance on a jury verdict (now on appeal) in the Fidelity v. SCRC matter is also misplaced. A jury verdict in no way relates to nor addresses the legal issues raised by the Complaint or in the Council's motion. It is irrelevant, and any reference to it should be stricken.

Furthermore, it is clear that the great weight of recent authority is that handbilling, bannering and the Council's warning letters are protected. Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council, 485 U.S. 568, 579 (1988); Overstreet v. Carpenters Local 1506, 409 F.3d 1506 (9th Cir. 2005); Gold v. Mid-Atlantic Regional Council of Carpenters, 407 F.Supp.2d 719 (D. Md. 2005); Benson v. Carpenters Locals 184 & 1498, 337 F. Supp. 2d 1275 (D. Utah 2004); Kohn v. Southwest Regional Council of Carpenters, 289 F.Supp.2d 1155 (C.D Cal. 2003). In their response, Circle relies on the ALJ decision underlying Gold. In Gold the District of Maryland acknowledged that, of those who have considered the issue, a small minority of NLRB ALJs have concluded that bannering violates Section 8(b)(4)(ii)(B), but rejected the NLRB's "core argument" that the Carpenters' banner violates Section 8(b)(4)(ii)(B) in light of the analyses of Overstreet, Kohn and Benson. 407 F.Supp.2d at 727.

## II. Circle's Trademark and Cybersquattting Claims

Circle argues that the allegations contained in the Complaint adequately state claims for "unfair competition" under § 1125(a) of the Lanham Act, common law unfair competition and trademark infringement, and cybersquatting. To survive a Rule 12(b)(6) motion to dismiss, Circle is obliged to provide the "grounds for "entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007). "[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Circle fails to meet this standard with its unfair competition and trademark claims.

Circle erroneously argues that commercial use, likelihood of confusion, and the elements of an Anti-Cybersquatting Protection Act claim only go to the *merits* of its claims and are "wholly inapposite" to a Rule 12(b)(6) motion. Rather than address these elements, Circle cites a few cases in an effort to couch its Count III trademark infringement claim as a broader unfair competition tort claim. Circle's reliance on the cited authorities, however, is misplaced. For example, in Mfg.

5

Research Corp. v. Greenlee Tool Co., 693 F.2d 1037 (11th Cir. 1982), no Lanham Act claim was alleged. In Golden Nugget, Inc. v. American Stock Exchange, Inc., 828 F.2d 586, 591 (9th Cir. 1987), the court affirmed dismissal of the plaintiff's trademark claim for failure to state a claim. In Brookfield Communications, Inc. v. West Coast Entertainment Corporation, 174 F.3d 1036 (9th Cir. 1999) the trademark infringement and unfair competition dispute was between two commercial enterprises. In SMJ Group, Inc. v. 417 Lafayette Restaurant, LLC, 439 F.Supp. 281, 288 (S.D.N.Y. 2006) the existence of the "confusion" element was not in dispute between the parties.

In American Heritage Life Insurance Company v. Heritage Life Insurance Company, 494 F.2d 3, 14 (5th Cir. 1974) (also cited by Circle) the court noted that unfair competition is an umbrella for a wide variety of claims, including the more *specific* statutory cause of action for trademark infringement under the Lanham Act. Indeed, several district courts have dismissed trademark infringement claims under circumstances very similar to those alleged in this case and by applying the same elements (including the likelihood of confusion factors) that Circle claims are irrelevant to a 12(b)(6) motion. See Cintas Corp., et al. v. Unite Here, et al., 601 F.Supp.2d 571 (S.D.N.Y. 2009) (defendant union granted Rule 12(b)(6) motion to dismiss on plaintiff's trademark infringement and cybersquatting claims

contained in "sprawling 334 paragraph amended complaint larded with seventy-nine exhibits" because likelihood of confusion was implausible and plaintiff's cybersquatting claim asserted insufficient facts to establish defendant's use was for profit); Sodexho v. HERE Local 217, 989 F.Supp. 169 (D. Conn. 1997); WAS Entertainment Ventures v. United Paper workers Intel. Union, 997 F.Supp 946 (M.D. Tenn. 1998) (case dismissed because union's use of mark was not in commerce and there was no likelihood of confusion); Cello Partnership v. Communications Workers of America, 2003 WL 25888375 at *8 (D.N.J) (plaintiff failed to satisfy the "use in commerce" legal threshold). In each of these cases, supplemental state law claims were also dismissed.

Likewise, Circle fails to state a claim for trademark infringement under § 1125(a) because it pleads no facts meeting the "commercial use" requirement of the Lanham Act, which does not extend to use of an owner's mark to criticize the owner's goods and services. See Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research, 527 F.3d 1045, 1052 (10th Cir. 2008). Circle fails to meet the Twombly standard with its common law unfair competition and trademark claims because it does not plead facts that show a plausible likelihood of confusion as to 1) the affiliation, connection, or association of the Council with Circle, or 2) the origin, sponsorship, or approval of the Council's

goods, services, or commercial activities by Circle. See Frehling Enterprises, Inc. v. International Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir. 1999); Cintas, (supra). Finally, Circle does not state a cybersquatting claim because the websites www.thecirclegroup.com and www.thecirclegroupstinkx.info are insufficiently similar, and because Circle has not pled facts presenting a plausible claim that the Council registered the domain name with the required bad faith intent to profit. Utah Lighthouse, 527 F.3d at 1058; Bally Total Fitness v. Faber, 29 F.Supp.2d 1161, 1164 (C.D. Cal.1998).

### III. Garmon Preemption

For its assertion that "courts have repeatedly found claims such as those made in this case are not preempted"[3], Circle cites a case decided in 1954, five years before Garmon. As previously demonstrated to the Court, and consistent with the Supreme Court's description of Section 303 as occupying "an area of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes"[4], the trend is clearly toward more "complete" preemption if the underlying cause of action arises from conduct regulated by Section 8(b)(4) of the NLRA. See, e.g., Smart v. IBEW Local 702, 562 F.3d 798, 808 (7th Cir. 2009)

---

[3]Response at p. 27.

[4]Teamsters Local 20 v. Morton, 377 U.S. 252, 261 (1964).

8

("section (303) completely preempts state law claims related to secondary boycott activities described in section [8(b)(4)]; it provides an exclusive cause of action for the redress of such illegal activity"). Id. at 808.

Circle also cites authority for the proposition that various tort claims are not preempted by Garmon (e.g., emotional distress, fraud and breach of contract, defamation, etc.). The appropriate inquiry for purposes of the instant motion is how the federal courts have applied Garmon to tortious interference claims of the type plead by Circle over the conduct of the type alleged in its complaint. Again, the great weight of authority is that they are preempted. See, e.g., BE&K Constr. Co. v. Carpenters, 90 F.3d 1318 (8th Cir. 1996); Ehredt Underground, Inc. v. Commonwealth Edison Co., 90 F.3d 238 (7th Cir. 1996); Allied Int'l. v. ILA, 640 F.2d 1368 (1st Cir. 1981); Labor Ready Mid-Atlantic v. Tri-State Bldg. & Constr. Trades Council, ___ F. Supp. 2d ___, 168 LRRM (BNA) 2642 (S.D. W. Va. Sept. 21. 2001); Brawn v. Coleman, 167 F. Supp. 2d 145 (D. Mass. 2001); Volentine v. Bechtel, Inc., 27 F. Supp. 2d 728 (E.D. Tex. 1998).

In Point Ruston. LLC v. Pacific Northwest Regional Council of the UBC, 658 F.Supp.2d 1266 (W.D. Wash. 2009), a contractor and property owner brought tortious interference claims against a Carpenter affiliate. Applying the reasoning of Smart, the District Court concluded that the contractor's tortious interference-

9

type claims that seek damages for conduct prohibited by Section 8(b)(4) (and thus actionable under Section 303) are "completely preempted by Section 303." 658 F.Supp. 2d at 1277. This decision is completely on point with this case, and the same reasoning applies to preempt Circle's state law claims.

The authority cited by Circle that tortious interference-type claims are not preempted by <u>Garmon</u> are distinguishable. Again, the limited exceptions to the reach of <u>Garmon</u> preemption include behavior "so extremely intimidating, destructive or violent as to threaten the domestic peace or to earn the epithet 'outrageous'", or "conduct marked by violence and imminent threats to the public order." <u>Garmon</u>, 359 U.S. at 247-248. Claims arising from violent mass picketing and the effects thereof (such as trespass or intentional infliction of emotional distress) may not be preempted. <u>Sears, Roebuck & Co. v. Carpenters</u>, 436 U.S. 180 (1978); <u>Farmer v. Carpenters</u>, 430 U.S. 290 (1977); <u>UAW v. Russell</u>, 356 U.S. 634 (1958).

The cases cited by Circle fall into this category. In <u>Rainbow Tours, Inc. v. Hawaii Joint Council</u>, 704 F.2d 1443 (9th Cir. 1983), the pickets were "threatening and unruly", and blocked ingress and egress from the property. <u>Id</u>. at 1444. The District Court decision[5] underlying <u>C&K Coal Co. v. UMWA</u>, 704

---

[5] 537 F. Supp. 480 (W.D. Pa. 1982).

10

F.2d 690 (3rd Cir. 1983) reflected evidence of violence and property damage culminating in arrests of picketers. Sun Refining & Mkt'ing. Co. v. Bldg. & Constr. Trades Council, 1984 WL 15644 (E.D. Pa. 1984) involved blocking of ingress and egress, "threatening activity" and acts of vandalism. Id. at *5-6, 12. VEPCO v. IBB, 1980 WL 2062 (N.D. W. Va. 1980) involved blocking of ingress and egress, armed pickets, and threats of violence and vandalism. Id. at *8, 14-15. The conduct alleged by Circle does not rise to this level, and the authority on which it relies is inapposite.[6]

## IV. Laidler's Privacy Claim

In her response regarding her privacy claim, Plaintiff Laidler invokes authority regarding a union "demonstrating in residential neighborhoods." Response at p. 32. Laidler's complaint does not allege that any demonstration took place in a "residential neighborhood"; on the contrary, she alleges that the Council bannered a commercial property. See Complaint at Para. 122 ("shopping center"). Authority regarding residential neighborhoods is irrelevant.

---

[6]Circle notes that the Supreme Court granted cert. in a case "involving tortious interference claims in a labor dispute." Response at p. 31, n. 10. The issue in Granite Rock v. IBT, No. 08-1214 (cert. granted June 29, 2009) arose under Section 301 of the LMRA (breach of contract), and does not involve Garmon preemption. See Granite Rock Co. v. IBT, 546 F.3d 1169 (9th Cir. 2008).

11

Laidler also cites Yarbray v. Southern Bell Tel. Co., 409 S.E.2d 835 (Ga. 1991) for the proposition that the issues raised by her privacy claim "are particularly inappropriate to resolve on a Motion to Dismiss." Response at p. 32. In that case, however, the Supreme Court of Georgia *affirmed* a grant of summary judgment dismissing the plaintiff's privacy claim. Association Services, Inc. v. Smith, 449 S.E.2d 454 (Ga. App. 2001) is also inapposite, for the privacy claim in that case arose from trespass onto private property by an investigator conducting surveillance, and so-called "pretext" calls to the plaintiff's workplace. Id. at 459. There is nothing in Laidler's claim that rises to that level. There are no allegations of vicious or malicious conduct necessary to make out a prima facie case of intrusion upon seclusion. Summer v. Bailey, 55 F.3d 1564, 1565-1566 (11th Cir. 1995); Ellenberg v. Pinkerton's, Inc., 202 S.E.2d 701 (Ga. 1973); Pinkerton v. Stevens, 132 S.E.2d 119 (Ga. 1963). Laidler's claim is due to be dismissed for failure to state a claim.[7]

---

[7] Of course, invasion of privacy claims that arise from the set circumstances that give rise to claims under Section 8(b)(4) are preempted by Garmon. See, e.g., Sheridan v. IBEW Local 455, 945 F.Supp. 12, 16-18 (D. Mass. 1996); Peninsula Shipbuilders Assoc. v. Steelworkers, ___ F. Supp. ___, 1978 WL 1766, *5 (E.D. Va. 1978) (Westlaw copy attached).

WHEREFORE, based on the above and foregoing, Defendant SCRC respectfully submits that its motion to dismiss is due to be granted, and that an appropriate order should follow.[8]

                                    Respectfully submitted,

                                    ___s/ Robert M. Weaver____
                                    Robert M. Weaver, Esq.
                                    Georgia Bar No. 558537

Nakamura, Quinn, Walls,
     Weaver & Davies LLP
Suite 380, 2700 Highway 280 East
Birmingham, AL 35223
205/870-9989
205/803-4143
rweaver@nqwlaw.com

                                  ___s/ Tessa A. Warren_____
                                  Tessa A. Warren, Esq.
                                  Georgia Bar No. 435157

Nakamura, Quinn, Walls,
     Weaver & Davies LLP
3516 Covington Highway
Decatur, GA 30032
404/299-1211
404/299-1288
twarren@nqwlaw.com

---

[8] Defense counsel certifies that this pleading was prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

___s/ Brian F. Quinn_____<br>
Brian F. Quinn, Esq.<br>
Ga. Bar No. 591356

DeCarlo, Connor & Shanley  
10th Floor, 101 Constitution Avenue, NW  
Washington, DC 20001  
202/589-1151  
202/589-0105 (fax)  
bquinn@deconsel.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been served on the following parties by means of the Court's CM/ECF systems this the 12th day of March 2010:

James W. Wimberly, Jr., Esq.  
Kathleen Jean Jennings, Esq.  
Wimberly, Lawson, Steckel, Schneider & Stine, PC  
Suite 400, 3400 Peachtree Road, NE  
Atlanta, GA 30326

___s/ Robert M. Weaver_____<br>
Robert M. Weaver